The next case on the call of the docket this morning is Agenda No. 23, Case No. 127801, Jerome Tims et al. v. Black Horse Carriers, Inc. Mr. John Paul Bryan. Good morning. May it please the court, opposing counsel, and those viewing online. I'm John Ryan, and I appear before you on behalf of the appellate defendant, Black Horse Carriers, Inc. In this case, the court is being asked to determine whether the Privacy Statute of Limitations applies to the Biometric Information Privacy Act. In McDonald v. Symphony, the court repeatedly referred to the Biometric Information Privacy Act as the Privacy Act, and I will do the same here. The Privacy Statute of Limitations applies to the Privacy Act because the type of injury at issue is an invasion of privacy which relates to or concerns publication. Since 1916, this court has held that the determination of the applicable statute of limitations depends upon an objective test. That objective test asks, what is the type of injury at issue? It does not look at the form of the action. 735 ILCS 15 backslash 13-201, entitled Defamation Privacy, applies to privacy claims which relate to or concern publication. This court's three previous rulings relating to the Privacy Act, the plain language relating to the Privacy Act, the intent and purpose behind the Privacy Act, all show that the type of injury at issue here, regardless of which section is alleged to be violated, is an alleged violation of privacy which relates to or concerns publication. Plaintiffs respectfully will attempt to limit the Privacy Statute of Limitations to only privacy claims wherein publication is a required element and where publication has been made to the masses. This contradicts the law, including decisions from this court and the plain language of Section 201, which is the Privacy Statute of Limitations. The objective test for determining the applicable statute of limitations, the title of the Privacy Statute of Limitations, the plain language of the Privacy Statute of Limitations, and the plain language of the Privacy Act all lead to one conclusion. The Privacy Statute of Limitations listed in 13-201 applies to the Privacy Act because the type of injury at issue here is an invasion of privacy which relates to or concerns publication. Remember, it's an objective test. For nearly a century, starting in 1916 with Tantovsky all the way through Travelers in 2007, this court asked, what is the type of injury at issue? It does not look at the form of the action. The title of 13-201 is, quote, defamation dash privacy. The title should not be overlooked in the analysis because it's consistent with the defendant's reading of 13-201. Counsel, does publication have to take place in order to violate Sections 15A, 15B, and 15E? No, Your Honor. No, Your Honor, they do not. The problem with that interpretation, though, is to require publication as an element contradicts the plain language of Section 13-201, which states actions for slander, libel, or for the publication of the act. And the reason why it violates the plain language of that statute is the definition of the word for, from Merriam-Webster's dictionary, means, quote, in relation to colon concerning. So if we interpret Section 13-201 to mean actions in relation to or concerning libel, excuse me, or concerning slander, libel, or in relation to or concerning slander, or concerning publication of matter violating the right of privacy, there's no question the Privacy Act is governed by the Privacy Statute of Limitations, and the reason being is this Court's previous rulings in Rosenbach, McDonald, and Westbend. In all three of those cases, the Court consistently addressed what is the whole purpose behind the Privacy Act. In Rosenbach, the Court mentioned the Privacy Act is to prevent problems before they occur. It's prophylactic in nature. In Rosenbach, this Court went through great lengths to talk about Sections 15a and 15b and how it gives the opportunity for an individual to say no. The opportunity to say no to what? The opinion goes on to say, to say no, I do not want to place my biometric information at risk of being compromised. Mr. Ryan, the Biometric Information Privacy Act provides for a person, or a cause of action for a person aggrieved. What does aggrieved mean? Your Honor, in Rosenbach, the Court said, the Court interpreted aggrieved to mean that if there is a violation of the Act. There has to be some injury. Correct, Your Honor. In Rosenbach, the Court looked at Section 15a and 15b, and they looked at the term aggrieved, and they said it gives people the opportunity to say no. Does that, does it require actual damages? In Rosenbach, this Court said no, Your Honor. In Rosenbach, this Court looked at the opportunity to say no up front, because the statute was prophylactic in nature. And the reason why you have the opportunity to say no is because you don't want to put your biometric information at risk of being compromised. What does compromised mean? It means to be disclosed, to be revealed. Again, if we look at 13-201, the word for means in relation to or concerning. So doesn't this case come down to the, really boil down to the tension between some of the broad language that this Court has used, such as embracing, and then the actual words of 201, publication of a matter involving the right to privacy? And there's some tension there, isn't there? There is, Your Honor, but it doesn't say publication. It has the word for before publication. So it says actions for slander, libel, or for publication. And the word for means in relation to or concerning. What opposing, what plaintiff is arguing in their whole argument that publication is a required element depends on this definition. They argue for means for the purpose of. Let's put that into Section 13-201, and you'll see it makes no sense. Actions for the purpose of slander, libel, or for the purpose of publication of matter violating the right to privacy shall be commenced within one year next after the cause of action accrued. You don't file an action for the purpose of slander. You don't file an action for the purpose of libel. You don't file an action for the purpose of publication of matter. It makes no sense, their definition in here. The privacy statute limitation in 201 is about scope. That's why with relation to or concerning has to be the definition for the word for. And there's no question that if we use the definition of in relation to or concerning, that no matter which part of the Privacy Act is alleged to be violated, that the type of injury at issue here is an invasion of privacy which relates to or concerns publication. Because in West Bend, you're going to hear opposing counsel argue West Bend should be just disregarded because it's a coverage case. We don't disregard cases just because they're public coverage cases, especially when the court goes through the process of interpreting the Privacy Act. In West Bend, this court acknowledged that there's two kinds of invasion of privacy claims. On the one hand, we have intrusion claims, and on the other hand, we have secrecy claims. Here, this court interpreted the Privacy Act in West Bend to say that the Privacy Act is a secrecy claim. How do courts define a secrecy claim? Quote, from West Bend, courts define the right to secrecy as the right to keep certain things confidential. How do they become unconfidential? They are disclosed. Another part, another thing that you may hear from opposing counsel is to try and limit West Bend just to a 15D claim, but that's not what West Bend said. It said, quote, we find the act, not just section 15D, we find the act protects a secrecy interest. That is in line with McDonald and West Bend, because in McDonald v. Symphony Brownsville Park, the court said, again, like in Rosenbach, the Privacy Act involves prophylactic measures to prevent compromise of an individual's biometrics. Again, when data is compromised, what does that mean? It means it's disclosed. Let's look at the plain language of the statute for a second. Section 15C talks about selling, leasing, or trading. Of course there's a disclosure there. How do you sell biometric information without disclosing it? Of course you have to disclose it. You can't trade it without having to disclose it. This is why the appellate court found that the one-year statute of limitations has to apply to section 15C. Section 15D talks about disclosure, redisclosure, or otherwise disseminate, which this court had a lengthy hearing on in Cothran v. White Castle. Disclosure means to publish. Disseminate means to publish. It doesn't have to be a dissemination to the masses. In fact, this court in West Bend, again, interpreted the word to publish to mean both to a single person and publication to the masses. Additionally, in Cialino v. Simon, once again, the court interpreted publication to mean to a single third party. So this concept that publication has to be to the masses is wrong, which is why the appellate court found that the one-year statute of limitations applied to section 15C and 15D. Unfortunately for my client, the appellate court found that a five-year statute of limitations should apply to 15A, B, and E. And the reason why they reached that conclusion is based upon a fundamental misunderstanding as to the scope of section 13-201. Nothing in section 13-201 says that publication must be an element of the underlying claim. There's nothing in there which says in section 13-201 element. In fact, the word publication is used as a noun, not a verb. So, again, actions for slander, libel, or for publication of matter involving the right of privacy must mean in relation to or concerning. And if that means in relation to or concerning, as defined by Merriam-Webster, that means it does not matter whether there's been a disclosure or whether you're trying to prevent the threat of disclosure. It's a secrecy claim. They both concern or relate to publication. Ergo, 201 applies to the statute of limitations. And the reason why the statute of limitations is not set forth explicitly is because the statute of limitations is not set forth explicitly. Are there any other statutes, are there any other cases that you're aware of interpreting statutes where the statute of limitations is not set forth explicitly, where courts have carved the statute up into little pieces, bits and pieces with different statutes and limitations? And they, the appellate court in the Second District applied the one-year statute of limitations under 13-201. We are not aware that other courts which have divvied up, if you will, different statute of limitations for the same act, unless it is expressly written into the statute. But that goes to statutory interpretation. And that's another point as to why 13-201 should apply. Plaintiff's argument is asking this court to imply exceptions, limitations, or conditions into 13-201 which simply do not exist. There's nothing in 13-201 which says publication must be an element or that publication must be to the masses. So absent express language from the legislature, we must interpret 13-201 as is written. The exception and limitation that they're trying to place on 13-201 is twofold. Publication is an element and publication is to the masses. Additionally, in the way they develop the argument is through case law, deciding not to apply 13-201 to claims for intrusion upon seclusion. Whether the court wants to apply 13-201 to all privacy claims or excise intrusion upon seclusion claims from the district, the court has no right to decide that. And the reason being is that in West Bend, this court decided that this is not an intrusion upon seclusion case, but rather this is a secrecy case. And the two cases, or three cases that they cited, Benitez had to do with an intrusion upon seclusion claim. And the appellate court in the second district decided that 201 did not apply to the seclusion claim. It did not apply to intrusion upon seclusion claims because those claims did not involve publication. Counsel, I notice here, of course, we're dealing with a certified question, basically. And the way the certified question is shaped, it asks us to choose which statute of limitations applies. It does not necessarily give us the option of doing what the court did in terms of divvying it up between the different statutes of limitations. Am I reading too much into that? Your Honor, if you're asking me, I believe yes, because it's asking what statute of limitations applies to the Privacy Act. And under section 15, there's 15A, 15B, 15C, D, and E. And what the appellate court did was almost look through a prism at each one of those as individual causes of action. But when we're looking at statutory interpretation, we look at the statute as a whole. And if you look at the statute as a whole, the type of injury at issue here is a privacy injury. But did the appellate court say both apply depending on what you're pursuing? That's correct, Your Honor. And so my question is, do we have that option the way this certified question is framed? I believe you do, Your Honor. But again, my argument is... No, I understand. I understand your argument is that 201 applies. Yes, Your Honor. I do believe you do. What the appellate court did was draw a line, not necessarily so much on the Privacy Act. But the appellate court's focus was based upon what is the scope of 201? And the appellate court, in its decision, frankly, there was no citation after this, other than I think it relied upon Benitez, was the word for must mean an inherent part of. And before the court to say, Merian Webster says, in relation to or concerning. So it doesn't, in relation to or concerning means something broader than requiring publication to be an element. I see my time is up. Thank you. Thank you, Mr. Bryant. Mr. Zuras. Good morning. May it please the court. My name is Jim Zuras, and I represent the plaintiff, Appellees Jerome Timms and Isaac Watson. The BIPA statute does not have its own limitations period. So the default, Section 205 limitations period controls, unless Blackhorse can establish that the General Assembly had something else in mind, in terms of a limitations period. Now, they point to the one-year limitations period in 201, but that can't be right. Because by its plain text, that only applies to causes of action for libel, slander, or for the publication of matter violating the right of privacy. This is not a cause of action for slander, libel, or for the publication of any matter. We don't allege it. We don't think Blackhorse engaged in any publication-related conduct. And it's not required under the BIPA statute in any event. As the appellate court held, and I believe 30-plus state and trial courts before it, publication is not an essential or an inherent element of any BIPA claim under any of its subsections. As this court held in its decision in Rosenbach, the court holding, is that the injury is the deprivation of liberty. It's the deprivation of the right to say no to any collection. That is the trigger. The trigger is not publication. It shouldn't surprise anyone that before we can have an action for publication, we need the act of publication. And, again, we don't allege it. We don't think that's what happened here. And it's not required under the BIPA statute in any event. And that includes under the two subsections that form the basis of our cross-appeal, namely 15C, which is profiting from biometric collection and disseminating, disclosing biometrics under Section 15D. As always, the plain text controls. So what does 201 provide? You know, it's not a coincidence that that's the same statute that talks about things like libel and slander, actions that necessarily require some type of publication before somebody can bring a cause of action. Certainly if the General Assembly in 201 intended for it to mean globally, this is the privacy limitations statute, they easily could have said so. If they wanted it to be the secrecy statute of limitations, they easily could have said so. There would be no reason to use language like for publication if that's what they intended. Those words mean the General Assembly intended some narrow scope, some limitations. Counsel, is disclosing or disseminating biometric data a form of publication? No, Your Honor. Publicizing something necessarily means that a disclosure has taken place, but the reverse is not necessarily true, which I think is what you are getting at. Someone can disclose or disseminate something, someone can move something from point A to point B, including data, without publicizing it. That happens in any traditional theft setting, for example, and no one would seriously say that if somebody sneaks into somebody's home and goes in their safe and takes their passport or something, or their Social Security card, or their credit card, or name some other confidential information, that a publication has now taken place. There has been a disclosure, there has been a dissemination of that private information, but that does not equate to a publication, and we firmly believe that when... So in a slander case, if I just told you the slanderous statement, I'm not publicizing it, I'm disclosing it. I think that's generally right, Your Honor, although admittedly there's a caveat there. I mean, if I have a special relationship with the subject of the victim who is being slandered in that situation, then courts have understandably ruled that, yeah, it wasn't a publication to the world at large, but you did disclose false, malicious information, whatever it is, to somebody with a special relationship, a close friend, a family member, a coworker. That still counts. It's a third-party vendor that it retained behind the scenes. And no court has suggested that in that situation there could be some relationship between, let's say, an employee like Mr. Timms or Mr. Watson and that third-party vendor. And it's especially true because unlike other situations where slander takes place to persons who may have a personal relationship, the plaintiff may never learn of that event. It would take place behind closed doors. It's not something we can reasonably expect to be revealed to the injured party. And so that's the distinction, and I hope I answered your question, Your Honor. I did my best. If the vendor is hacked and some unscrupulous person gets the data, then that's, again, not a publication. That is correct. That's a theft, I think, in that situation. It hasn't been published. It's been stolen, and it may have been improperly used. Again, if we go back to our, let's take a credit card example. Somebody steals a credit card from me out of my wallet. I put my credit card in my wallet not because so much I'm concerned about it being publicized on the Internet. I'm concerned about somebody stealing it and using it improperly. I don't see how that, in fairness, could be deemed a publication under any authority that we're aware of. Counsel seems to want to change the meaning of 201 from for publication, so in response to a publication, to an action which concerns, if I got this right, or involves the act or process of publishing matter that affects a right of privacy. That's at least on page 21 of their brief. That's rewriting the statute. That is a classic example of rewriting plain text. You need a publication first, and that goes to what the nature of our claim is. So when our clients came to us, they didn't say, well, you know, I think a wrongdoing happened here because Blackhorse publicized our data. Again, we don't believe that even happened here. What they did say is that they took, Blackhorse took our data without getting informed consent, without establishing the retention and destruction schedule like they were required to do under A, took it without consent under B, transmitted it to another party under Section D, and those are separate causes of action. Each one has its own duties, responsibilities, obligations, and they do form the basis of separate causes of action, as in our case, we have three of them. This is all borne out by not just, of course, our allegations, and by the way, we didn't allege things the way we did because we are engaging in manipulation of the pleadings or the facts or artful pleading or whatever the code words are. We alleged it exactly as it happened in response to the facts, and there's no indication from our standpoint that there was any publication here, so that's what we alleged, and there's no requirement under any of the subsections for us to plead it or to prove it or to secure liability at trial if it comes to that. The words publication will never have to be uttered at trial. Evidence of publication will never have to be brought out at trial in this case. The plain text of the statutory language in BIPA itself also controls, we do have an agreement here, it's an objective standard, so objectively, why are we here? How would we explain it to somebody who didn't have any pre-notice of what we're doing? Well, we might say, well, they, you know, they took data without informed consent. We wouldn't be talking about things like publicizing or displaying it to the world or even to parties with a special relationship. It really manifests itself most clearly when you look at each separate subsection. A has to do with creating a policy and a practice and adhering to it to retain and destroy biometric data that is collected. How on earth that has anything to do with publication, we're at a loss. Blackhorse doesn't explain how it or any entity could violate subsection A, for example, by publicizing data. It would make no sense for us to allege it to state a cause of action. If we did, I imagine the trial court would be confused, would probably strike those allegations. It makes no sense. It does not give rise to liability under that subsection. Same thing for B, collecting without consent. No element of publication. The injury is complete upon the collection without consent. Same thing for E, which requires reasonable care in the storage of biometric data. So this is an interesting case because neither side is arguing that the appellate court got it right. And that might be somewhat unique, Your Honor. And part of the reason for that is, isn't the appellate court's analysis somewhat unworkable? Let me just put it in the context of this. We look at E, the appellate court said, oh, there's no publication in E, so it's a five-year statute of limitations. But I look at E and it talks about storing, transmitting, and protecting data. And certainly storing and protecting might not involve publication, but under the appellate court's analysis, transmitting certainly would involve publication. So you'd have to not just look at the subsection, you'd have to look at the allegations in the complaint to see whether or not there's a disclosure, transmittal, or something to determine which statute of limitations is involved. Possibly, Your Honor, and I do see that dichotomy. I will say, though, with respect to E, I don't think that statute is getting to the actual events of a transmission. Or whatever we're calling it, a disclosure. It has to do with not enacting the safeguards to prevent that event from happening, that bad event or occurrence from happening. But I don't believe, and we don't here, we don't actually allege a cause of action under E. But I don't think that that is the statute that comes into play when, what happened in this case, we have the employer sending data to... My question isn't about that. It's about do we have to look at the complaint itself, then, and the actual allegations to determine what the statute of limitations is. We can't even just, you know, both of you want to argue that we look at Section 15, and it's either 1 or it's 5, no matter what. The appellate court says, well, we look and see what the allegations, whether it's under 15A, B, so on and so forth. I'm saying that there's a possibility that we'd have to not just look at that. We'd have to look at the actual allegations of the complaint to determine whether or not, under the appellate court's analysis, not under your analysis, under the appellate court's analysis. So I'm just saying, if we affirm the appellate court, what are we telling the trial courts to do? If we affirm the appellate court, I think what we are saying is that in all instances, it is not a required or inherent element of certain statutes, certain subsections, to allege publication, namely the ones that we have here, A, B, and D. You don't have to allege publication for that, but you do have to allege something that, I guess, smells like or is, at least in the appellate court's view, akin to publication for the other ones. I don't agree that one profits from biometric data by publicizing. In fact, we're having a hard time understanding how that could come about. I suppose there is a case that could come about where that could happen. This isn't it. And even if it were true that there is some act, some bad actor who profits by publicizing, I don't think it changes our fundamental analysis, because it's what is the essence of the claim? I mean, the case law is, they're using different words, the crux, the gravamen. I'm trying to say, well, what's the case about? Why are we here? Well, why is the plaintiff suing? What act happened to provoke the plaintiff into wanting to file the lawsuit? And no matter how you slice it, it wouldn't be the publication in any of those statutes that did it. It's still going back to the fundamental, you know, what's the heart of BIPA? One court phrases it that way. It's B, the collection, the initial collection, without informed consent, without giving the opportunity to say no. And of course, again, that's the fundamental holding in the Rosenbach decision. And one of these sort of ironies, I guess, is, you know, just having a publication standing alone does not give rise to any BIPA claim under any subsection. If it's just publication on its face, even under D, that's not good enough. You need to allege the fundamental facts that do give rise to the cause of action. Namely, that you took data, but before you did that, you didn't advise the plaintiff, get informed consent, establish the schedule, the retention policy, the destruction policy, and so forth, and you did it. So it isn't publication in and of itself is never the trigger. It is other events that are the trigger, and all of that highlights the difference between this type of a case, this statutory cause of action, and the ones that are cited by Blackhorse, all of which require publication as a necessary element. So all the tort actions, the common law actions, the statutory actions that they rely upon, yeah, for slander, you have to publish. Whatever that means to a private person or what have you, somebody with a personal relationship, at false light, you know, the Medical Patients' Right Act and the Identity Protection Act and the AIDS Confidentiality Act, whatever it is, it is the publication that triggers the facts that it is governed by the 201 limitations period. Yes, Your Honor. The Illinois right of P for publicity in that statute. I think that's important, but that is, as I understand it, a statute that governs what an entity is supposed to do in response to an actual data breach, and it governs the actions that the entity must take. In response to that kind of circumstance. And we don't see how that has a whole lot to do with this statute, where, again, you know, it's not about the actual publication under any of its subsections. That's probably the most I know about that act, Your Honor. In any event, in that statute, something has to have occurred in terms of publicizing. I think that's why they actually use the word publication in the statute. And that leads us to the acronym. I do think that a five-year limitations period is the most workable. It's not only the most natural, logical result that would flow by operation of law, but it has the additional benefit of reducing uncertainties, unpredictabilities, any confusion. It is kind of odd that, so under the current, the appellate court holding, that an entity could collect, they're still subject to the five-year limitations period, but after a year, they now have free reign to go ahead and sell the data and do some other things. I mean, it would give rise, it would motivate entities, we think, to treat different actions differently with respect to their regulation of the biometric data they took. We think a five-year limitations period for all the subsections adds the most clarity. It's the most straightforward, it's easiest, it's the most workable, it's easiest to administer justice for the trial courts. And fundamentally, again, under no subsection do we believe that publication is essential or inherent to the cause of action, to bringing the cause of action. So we would respectfully request that the court answer the certified question by holding that a five-year period for each of its subsections. And unless your honors have any more questions, I will say thank you to the court and to the students and the viewers. Thank you. Good morning again. This court has received numerous pages of briefs and heard oral argument today, and we still did not hear from the plaintiff about the plain language of 201. Why? Because they're trying to prove a negative simply by what the decision that this court has made, when the threat of publication has never come before this court. The threat of publication and how that falls within 201 has never come before this court. Those cases wherein publication did come before this court, the court has chosen to apply 201. But you can't prove a negative simply because this court hasn't decided the issue. The plain language of 201, again, means in relation to or concerning publication. I'd like to correct one thing, Your Honor, for this court. In plaintiff's oral argument, they kept saying for the publication of. It doesn't say for the publication of. It says for publication, which means in relation to or concerning publication. They're attempting to rewrite 201. Additionally, plaintiff argued that they make no claim for publication. They're alleging a violation of subsection 15D, which means to disclose or redisclose. They allege that my client disclosed their client's biometric information to a third-party payroll vendor. That is in their complaint. It's a play on words to say that the word disclosed does not mean to publish. In fact, the first district about 12 years ago in a case called Tantas Best v. Zurich actually held disclosed means to publish. It's in the definition. Additionally, to Justice Burke's point, where does this end? Does this end with the exact elements of every single claim? No, because this court's precedent since 20, excuse me, since 1916, not 2016, 1916 says we look at an objective test. And the objective test says what is the type of injury at issue? And the type of injury at issue here is an invasion of privacy, which relates to or concerns publication. It's not a data breach. It's about name, image, and likeness, holding someone out as endorsing your product is an example of it. But again, they're trying to use Blair, a distinguishing point in Blair, to prove a negative. Because the Right to Publicity Act requires a publication element, it can't apply here? No. That's not true. You can't distinguish a case to prove a negative. You can distinguish a case to say why it shouldn't apply here, but it doesn't prove a negative. And in that court, the Right to Publicity Act has statutory damages, the Right to Publicity Act requires consent, and the court said one-year statute of limitations. Finally, the last point I'll get to is the selling of data. This happened a few times, I believe, in the cross-reply for plaintiffs' counsel. They're conflating the issues of accrual versus statute of limitations. If there's a new disclosure today, that's accrual. It doesn't go to the statute of limitations. If my client alleges, if they allege that my client today sold their biometric data, traded their biometric data, leased their biometric data, today, it's a brand-new statute of limitations. So the reason why they're trying to conflate accrual and statute of limitations is to try and create this cliff effect that doesn't exist. What has happened under the Privacy Act is when lawsuits are brought, most of these lawsuits have been brought against employers throughout the state of Illinois. You hear about Facebook and the big corporations, but most of them are brought against small businesses. Thousands. The moment they get the lawsuit, not all of them, but almost all of them stop using the clock and delete the data. The ones that don't, comply. And all that came from the decision in Rosenbach in 2019. That's where all these lawsuits are coming from. So for those reasons, we ask this court to affirm the appellate court's decision in holding that the one-year statute of limitations applies to Sections 15C and D, and reverse the appellate court's decision and hold that the one-year statute of limitations should apply to Sections 15A, B, and E. Thank you. Congratulations, Chief Justifier. Jerome Tins v. Black Horse Carriers will be taken under advisement by this court as a gender-bound suit.